UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

SUE LEWIS,                              )
                                        )
        Plaintiff,                      )        No. 6:14-CV-164-HAI
                                        )
v.                                      )
                                        )        MEMORANDUM OPINION & ORDER
CAROLYN W. COLVIN, *Acting              )
Commissioner of Social Security*,       )
                                        )
        Defendant.                      )
                                        )

                            ***   ***   ***   ***

        Plaintiff, Sue Lewis, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to

obtain judicial review of an administrative decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income ("SSI").  The

parties each filed a notice of consent to the referral of this matter to a magistrate judge.  D.E. 8;

D.E. 10.  Accordingly, this matter was referred to the undersigned to conduct all proceedings and

order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of

Civil Procedure 73.  D.E. 11.  The Court, having reviewed the record and for the reasons stated

herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 18) and **GRANTS**

Commissioner's motion for summary judgment (D.E. 19).

## I.  BACKGROUND

        Plaintiff filed an application for SSI on March 29, 2011.  D.E. 14-1 at 24.  She alleges

disability beginning on January 1, 2011, due to borderline intellectual functioning, vision

problems, depression, anxiety, and back pain.  *Id.* at 24-26.  Plaintiff's claim was denied initially

and upon reconsideration.  *Id.* at 24.  Subsequently, at Plaintiff's request, an administrative

hearing was conducted before Administrative Law Judge Donald A. Rising ("ALJ") on July 2, 2013. *Id.* During the hearing, the ALJ heard testimony from Plaintiff and vocational expert James Miller ("VE"). *Id.* Plaintiff, who was twenty-six years old on the alleged onset date, has a high school education and can communicate in English. *Id.* at 31. Although Plaintiff has no past relevant work experience, the VE testified that jobs exist in significant numbers in the national economy that Plaintiff could perform, and the ALJ accepted that testimony. *Id.* at 31-32.

In evaluating a claim of disability, an ALJ conducts a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). If a claimant is not found disabled at step 3, the ALJ must determine the claimant's residual functional capacity, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e). Fourth, if a claimant's

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his residual functional capacity), he is not disabled. 20 C.F.R. § 404.1520(f).   Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled.   20 C.F.R. § 404.1520(g).

In this case, at Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 29, 2011, the application date.  D.E. 14-1 at 26.  At Step 2, the ALJ found that Plaintiff has the severe impairment of borderline intellectual functioning (BIF).  *Id.*  The ALJ found that the record did not substantiate Plaintiff's claims of acute loss of vision, low back pain, depression, or anxiety.  *Id.*  At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 27.  The ALJ determined that Plaintiff had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels involving simple instructions and tasks that require no more than a 4th grade reading level."  *Id.* at 30.  At Step 4, the ALJ found that Plaintiff had no past relevant work.  *Id.* at 31.  At Step 5, the ALJ relied on the testimony of the VE to find that, based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.  *Id.*  Accordingly, on August 29, 2013, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled, and therefore, ineligible for supplemental security income.  *Id.* at 32.  The Appeals Council declined to review the ALJ's decision on June 17, 2014.  *Id.* at 6.

## II. DISCUSSION

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

Plaintiff's brief contains conclusory arguments of ways in which the ALJ allegedly erred. Several of these arguments are not supported by either citation to relevant legal authority or to the administrative transcript.  The Court reminds Plaintiff that it is not the Court's role to search through his brief to determine what argument he is making.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judge are not like pigs, hunting for truffles buried in briefs."). The Court will not "undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Further, the Court's Standing Scheduling Order provides that the Court "will not formulate arguments on the parties' behalf."  D.E. 15 at 3.  Therefore, when a party fails to develop an argument, that argument is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones.").

After a review of Plaintiff's brief, the Court will only consider three sufficiently developed arguments contained therein. First, Plaintiff alleges that the ALJ "improperly rejected the credibility of the claimant with regard to the extent of her physical conditions." D.E. 18-1 at 8.  Second, Plaintiff asserts that the ALJ's "finding as to the Plaintiff's residual functional capacity is inaccurate." *Id.* at 9.  Finally, the Court will consider Plaintiff's argument that the ALJ's "determination that the Plaintiff is not disabled is not supported by substantial evidence." *Id.* at 10.

5

## 1.  The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff's first sufficiently developed argument is that the ALJ "improperly rejected the credibility of the claimant with regard to the extent of her physical conditions."   *Id.* at 8. Plaintiff testified that she had formerly worked at a restaurant but was fired because she was too slow counting money from the cash register.  D.E. 14-1 at 668-72.  She also testified that she had been going to treatment for depression and stress "once a week."  *Id.* at 672-73.  She further stated that during labor with her child she was given a spinal block that has caused her back to hurt "ever since" and is "eating [her] muscles up."  *Id.* at 675.  Moreover, she testified that she took special education classes in high school and can read "a little bit."  *Id.* at 666.

In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant.  20 C.F.R. § 404.1529(a).  To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.  Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).  In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

6

20 C.F.R. § 404.1529(c)(3);  *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the

credibility of claimant.  *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d

525, 531 (6th Cir. 1997);  *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990);  *Kirk v. Sec'y of*

*Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)).   Even so, the credibility

determinations of the ALJ must be reasonable and supported by substantial evidence.  *Rogers*,

486 F.3d at 249.

Here, the ALJ cited the correct test and found that "the [Plaintiff's] medically

determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely credible for the reasons explained[.]"  D.E. 14-1 at 30.  Plaintiff

argues that "[e]ven if good reasons exist to question the credibility of a claimant, an

Administrative Law Judge must nonetheless make those reasons apparent[.]"  D.E. 18-1 at 8

(citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).   The ALJ, however, states

multiple reasons for discrediting the subjective claims of Plaintiff.  First, the ALJ stated that the

"[d]etails of the [Plaintiff's] lifestyle…undermine the alleged incapacitation."  D.E. 14-1 at 30.

The ALJ had noted previously that the Plaintiff's daily activities include a variety of personal

care tasks, raising her two-year-old child, preparing multiple course meals, driving, shopping,

and taking care of household chores.  *Id.* at 28.  Moreover, Plaintiff gets out of the house three

times a day, pays bills, watches television, and visits friends and family several times a week.  *Id.*

Second, in addition to Plaintiff's day-to-day activities, the ALJ considered the Plaintiff's

medical record in making her credibility determination.  *Id.* at 30.  The ALJ noted that "despite

testimony of severe organic cognitive deficits, recent counseling appointment notes dated March

2013 identify 'no impairments at this time' with regard to intellectual functioning[.]"   *Id.* (quoting *id.* at 382).   Further, the ALJ stated that the record indicated Plaintiff was assessed a Global Assessment of Functioning Scale (GAF) score of 65, which represents "some mild symptoms…OR some difficulty in social, occupational, or school functioning…but generally functioning pretty well, has some meaningful interpersonal relationships."   *Id.* at n.2 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000)).   The ALJ also pointed out that Plaintiff's academic records, "despite alleged special education services," indicated "a pattern of outstanding grades…in range of conventional classes throughout high school, including Biology, Civics; Algebra and Algebra 2; Geometry; U.S. History; and Senior English."   *Id.* at 30-31.   Moreover, the ALJ noted that "the small number mental [sic] status exams are similarly probative in contradiction of the limitations alleged."   *Id.* at 30.

The ALJ employed the proper test for evaluating the Plaintiff's credibility, considered the factors that that the agency has bound itself to consider, and complied with applicable Sixth Circuit law.   In so doing, the ALJ has conducted a proper credibility determination, which the Court's independent review has found to be reasonable and supported by substantial evidence from the record.

### 2.  The ALJ's Finding as to the Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence

Plaintiff claims that the "Administrative Law Judge's finding as to the Plaintiff's residual functional capacity is inaccurate."   D.E. 18-1 at 9.   Specifically, Plaintiff argues that the "ALJ failed to address the [Plaintiff's] diagnosis of Depression and Anxiety and the effect these uncontradicted finding [sic] would have on her ability to perform work."   *Id.*   Further, Plaintiff argues that the ALJ acted as his own medical expert in rejecting the findings of Dr. Pack, records

from Cumberland River Comprehensive Care, and Dr. Baggs' exam. *Id.* at 10. Based on these records, Plaintiff argues that "she could not perform a wide range of even sedentary work on a regular and sustained basis based on her mental condition." *Id.* at 9. Thus, according to Plaintiff, "[a]ll of these significant limitations should have been presented to the vocational expert." *Id.* at 10.

A claimant's residual functional capacity represents the most that she can still do in a work setting despite her limitations. 20 C.F.R. § 416.945. This decision is to be made by the ALJ after reviewing the entire record. 20 C.F.R. 404.1520(e); 416.920(e), 404.1545; 416.945; SSR 98-8. Moreover, "for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Therefore, the hypothetical question does not need to contain every one of the claimant's conditions. However, "the ALJ must include in the question an accurate calculation of the claimant's residual functional capacity – i.e., a description of what the claimant can and cannot do." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (quotations omitted). Moreover, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ found that the Plaintiff had the RFC "to perform a full range of work at all exertional levels involving simple instructions and tasks that require no more than a 4th grade reading level." D.E. 14-1 at 30. This RFC is supported by substantial evidence in the record. The ALJ gave determinative weight to the opinion of state agency psychologist Mary Thompson. *Id.* at 31. "State agency medical and psychological consultants…are highly qualified physicians,

psychologists…who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). Giving greater weight to state agency physicians is permissible. *See Blakely v. Commissioner of Social Security*, 581 F.3d 399, 409 (6th Cir. 2009).

Dr. Thompson opined that Plaintiff was not significantly limited in her ability to carry out short and simple instructions or in her ability to maintain attention and concentration for extended periods. D.E. 14-1 at 49. Moreover, Dr. Thompson opined that Plaintiff was not significantly limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and that Plaintiff would be able to "interact adequately with peers, supervisors and public for task completion" and "adapt adequately to work demands and situational changes given reasonable support." *Id.* at 50. State agency psychologist Ed Ross, Ph.D., reviewed Dr. Thompson's opinions and concurred with her report. *Id.* at 40.

Further, the opinions of Dr. Thompson are consistent with the findings of Dr. Baggs following an evaluation of Plaintiff in May of 2013. *Id.* at 401-09. Dr. Baggs tested Plaintiff and determined that she was "functioning intellectually in the Borderline range with less than average academic achievement." *Id.* at 406. Dr. Baggs determined that her "ability to read and spell was at approximately 4th grade level." *Id.* Dr. Baggs assessed a GAF of 65 and found that the she had the "ability to understand and remember simple instructions." *Id.* at 409-10. He found that Plaintiff "probably could relate at least adequately with people in either a work place environment or social setting." *Id.* at 410. Finally, Dr. Baggs assessed that Plaintiff's "[p]rognosis was judged fair to fairly good with continued, appropriate treatment." *Id.*

Moreover, other evidence in the record supports the ALJ's RFC finding. As noted previously, Plaintiff's academic records indicated a history of "A" grades in significant classes such as U.S. History, Civics, English, Biology, Algebra, and Geometry, with an overall GPA of 3.12. *Id.* at 161. Further, Plaintiff reported being able to read letters from Social Security and complete questionnaires on her application for benefits "with help." *Id.* at 667-68. Finally, Plaintiff's significant independent day-to-day lifestyle further supports the ALJ's RFC finding. Plaintiff is able, among other things, to care for her small child, cook multiple course meals, and perform a variety of chores around the house. *Id.* at 28, 176-78.

Plaintiff argues that the ALJ should have included her "diagnosis" of depression and anxiety in the RFC, thus failing to consider "the effect these uncontradicted finding [sic] would have on her ability to perform work." D.E. 18-1 at 9. Contrary to Plaintiff's argument, the ALJ did consider her reports of depression and anxiety. *See* D.E. 14-1 at 27.

Plaintiff further alleges that the "ALJ [rejected] specific restrictions placed on the [Plaintiff] by Dr. Pack in the Consultative exam." D.E. 18-1 at 10. Pack evaluated Plaintiff in 2008, over two years before Plaintiff's alleged disability onset date. D.E. 14-1 at 191. Pack determined that Plaintiff's "ability to understand, retain, and follow instructions would be described as fair for specific concrete information presented verbally, but likely poor for abstract academic task." *Id.* at 195. He further found Plaintiff's ability to sustain attention to perform repetitive tasks was fair, as was her general adaptability and ability to relate to others. *Id.* Plaintiff cites these findings and concludes "[a]ll of these significant limitations should have been presented to the vocational expert." D.E. 18-1 at 10.

Plaintiff's conclusory allegations do not specifically allege how including Pack's findings would have had any effect on the VE's testimony.  In fact, the hypotheticals posed to the VE by the ALJ are directly supported by the findings of Pack:

ALJ:          Dr., if you would first, assume someone of [Plaintiff's] age from an educational background.  I'll ask you to assume about a fourth grade reading level, and I'll ask you to assume no relevant work experience.

If you're asked to assume restrictions, they're no greater than simple instructions or tasks.  Can you offer a few examples of any source of occupations that would be performable perhaps at the sedentary, light and medium exertion levels?

VE:          Yes, sir.

At the medium level there would be dishwashing jobs.  And in the regional economy, that is the Commonwealth of Kentucky, there would be about 3,000 jobs, with over 250,000 in the national economy.

Also at the medium level, there would be food preparation workers.  That would number over 1,000 in the region and over 150,000 in the national economy.

ALJ:          Any at the light level?

VE:          At the light level there would be room cleaning jobs that would number over 4,000 in the region, and over 350,000 in the national economy.

And there would be sewing machine operators that would number over 2,000 in the region and over 80,000 in the national economy.

ALJ:          Are there any at the sedentary level?

VE:          At the, yes, sir.  At the sedentary level there would be, one category of jobs would be helpers and laborers.  In this category there would be over 1,000 jobs in the region and about 55,000 in the national economy.  One example of jobs in that category would be that of a cuff folder job.  I [sic] would b [sic] sedentary and unskilled.

There also would be hand packing jobs that would number about 300 in the region and over 20,000 in the national economy.

> There also would be jobs at a group that's production workers that would number about 700 in the region and 35,000 in h [sic] national economy.
>
> These would be some examples.
>
> ALJ:    Would performability of the frequency of these jobs be impacted were you further asked to assume just casual and infrequent coworker contact, no public contact, and gradual or infrequent changes in work routine.
>
> VE:    The numbers and types would not be impacted in any way.

Id. at 683-84.

Here, the ALJ limited the hypotheticals to jobs that contained no more than simple instructions or tasks, and required no more than a fourth grade reading level. *Id*. Moreover, the ALJ asked the VE to consider a limitation of "just casual and infrequent coworker contact, no public contact, and gradual or infrequent changes in work routine." *Id*. To each hypothetical posed, the VE testified there would be jobs in the regional and national economies. The hypotheticals are consistent with Pack's findings, and the Plaintiff has failed to establish otherwise.

The Plaintiff further lists the restrictions Dr. Baggs imposed on Plaintiff in his evaluation. Plaintiff does not argue that these should have been included in the RFC or in the hypotheticals, but asserts that "Dr. Baggs' Consultative Exam diagnosed Anxiety Disorder, Depression Disorder." D.E. 18-1 at 10. To the extent Plaintiff is arguing that Dr. Baggs found that she was suffering from a "significant limitation" of depression and anxiety, that is not supported by Dr. Baggs's report. Dr. Baggs found that Plaintiff "may be experiencing mild generalized anxiety and possible very mild depression." D.E. 14-1 at 408. Further, the hypotheticals posed by the ALJ are consistent with the limitations that Dr. Baggs found. *See id.* at 410.

The ALJ's RFC finding, and his subsequent hypotheticals posed to the VE, were proper and supported by substantial evidence in the record.  Accordingly, the Court finds no error.

### 3. The ALJ's Determination that Plaintiff is Not Disabled is Supported by Substantial Evidence

Plaintiff's final argument is that the ALJ's "decision is not supported by substantial evidence, and the decision does not comply with the procedural requirements of the regulations." D.E. 18-1 at 10.  Plaintiff fails to identify any particular finding or conclusion that he seeks to challenge, aside from the challenges discussed previously.   Where a claimant has failed to specifically identify alleged error, the Sixth Circuit has:

> decline[d] to formulate arguments on [the claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence.  Rather, we limit our consideration to the particular points that [claimant] appears to raise in [his] brief on appeal.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and quotation marks omitted).

After reciting the legal standard applicable to the case, Plaintiff's argument consists of the following:

> [i]t is the contention of the Plaintiff under these standards of review that there is not substantial evidence to support the denial of her application for security benefits.  The objective medical evidence unequivocally documents that the Plaintiff has several conditions which are disabling.

D.E. 18-1 at 11.  These challenges warrant "little discussion, as [Plaintiff] has made little effort to develop this argument in [her] brief on appeal, or to identify any specific aspects of the Commissioner's determination that lacks support in the record." *Hollon*, 447 F.3d at 490-91.

Notwithstanding the imprecise nature of Plaintiff's argument, as outlined above, a review of the evidence of record demonstrates that the ALJ's decision is supported by substantial evidence. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *see also Rogers*, 486 F.3d 241; *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("[F]indings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.").  Having reviewed the entire record of this matter, the Court finds no error with the ALJ's assessment and analysis of the evidence of record or her determination that Plaintiff is not disabled as defined by the Act.

Finally, to the extent Plaintiff argues substantial evidence does not support the ALJ's decision because the record includes a diagnosis of major depression (D.E. 14-1 at 386, 400), those diagnoses pre-date Dr. Baggs's evaluation. *Compare id. with id.* at 402.  As described above, the ALJ's decision is supported by substantial evidence and is required to be upheld even if substantial evidence supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## III.  CONCLUSION

Accordingly, and the Court being sufficient advised, **IT IS HEREBY ORDERED** as follows:

(1)      Plaintiff's Motion for Summary Judgment (D.E. 18) is **DENIED**;

(2)      Commissioner's Motion for Summary Judgment (D.E. 19) is **GRANTED**;

(3)  **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 10th day of August, 2015.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge